**In re Mayer MORGANROTH, Petitioner-Appellant.**

**Raymond J. DONOVAN, Secretary of Labor, Plaintiff-Appellee,**

v.

**Frank FITZSIMMONS, et al., Defendants.**

No. 81–1574.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 19, 1983.

Decided Sept. 30, 1983.

Albert J. Krieger (on brief), Miami, Fla., for petitioner-appellant.

Arthur R. Goldberg, U.S. Dept. of Labor, Special Litigation Staff, Richard P. Carr, Susan S. Slattery, Bruce Rinaldi (argued), Sidney Dickstein, Dickstein, Shapiro & Morin, Washington, D.C., Jack B. Schmetterer, Gottlieb & Schwartz, Marvin Gittler, Asher, Greenfield, Goodstein, Pavalon & Segall, Edward J. Egan, Burke, Weber & Egan, Sherman M. Carmell, Carmell & Charone, Jeffrey D. Coleman, Jenner & Block, James L. Coghlan, Coghlan, Joyce & Nellis, Chicago, Ill., Alan M. Levy, Goldberg, Peviant & Uehlman, Joseph P. Balistrieri, Milwaukee, Wis., Wildman, Harrold, Allen & Dixon, Raymond J. Smith, Chicago, Ill., James P. Hoffa, Hoffa, Chodak & Robiner, Detroit, Mich., Frank M. Covey, McDermott, Will & Emery, Chicago, Ill., Bernard S. Goldfarb, Goldfarb & Reznick, Cleveland, Ohio, F.W. Dennerline, Fillenwarth & Fillenwarth, Indianapolis, Ind., for appellees.

Before KENNEDY, JONES and CONTIE, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Petitioner Morganroth seeks review of an order directing him to answer deposition questions to which he asserted his fifth amendment right to remain silent on the ground that his answers might tend to subject him to criminal liability.

In 1975 the Central States, Southeast & Southwest Areas Pension Fund made a loan to Indico Corporation of $7,000,000. Morganroth was president of Indico Corporation at that time. Subsequently, Indico defaulted on the loan and as a result the Pension Fund suffered significant losses on its investment. Morganroth has since been involved in a number of lawsuits. He was indicted by a federal grand jury on conspiracy and mail and wire fraud charges arising out of this loan transaction with the Pension Fund. On October 20, 1979, subsequent to his indictment, Morganroth was deposed in a civil action, *Trustees of Central States, Southeast & Southwest Areas Pension Fund v. Indico Corp.*, then pending in Florida state court. This civil case was a foreclosure proceeding in connection with the same loan. At that deposition Morganroth appeared voluntarily and answered all questions put to him. Morganroth is himself an attorney. In March 1980, Morganroth was acquitted of the federal criminal charges. It appears that after his acquittal, Morganroth was subpoenaed to appear before a New York federal grand jury and was asked the same set of questions which he voluntarily answered in the Florida state foreclosure proceeding. Morganroth asserted his fifth amendment privilege to these same questions. Immunity was conferred upon Morganroth, his testimony given, and thereafter he was advised by one of the prosecutors that his testimony was in serious conflict with that of others appearing before the grand jury.

Subsequent to his acquittal and the immunized testimony before the New York federal grand jury, the Secretary of Labor subpoenaed Morganroth to appear for a deposition as a non-party witness in this civil action pending in the United States

District Court for the Eastern District of Illinois. In this action, the Secretary of Labor has alleged that defendants, who are former trustees and officials of the Central States, Southeast & Southwest Areas Pension Fund, imprudently made, administered and monitored certain investments on behalf of the Fund in violation of their fiduciary obligations under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* Morganroth's deposition was scheduled for June 29, 1981 in Detroit, Michigan pursuant to Fed.R.Civ.P. 45(d)(2). At the deposition, Morganroth was represented by counsel. He answered questions under oath. After providing information as to his name, address and occupation, Morganroth individually refused to answer each question propounded to him by counsel for the Secretary of Labor on the ground that each answer might tend to incriminate him, without elaborating further. The questions he refused to answer at this latter deposition covered the same aspects of the Indico loan transaction with the Central States, Southeast & Southwest Areas Pension Fund about which he had previously given deposition answers voluntarily in the Florida state foreclosure proceeding on October 20, 1979 and pursuant to the grant of immunity in the New York federal grand jury proceeding. As a result, the Secretary of Labor moved the United States District Court for the Eastern District of Michigan that same day for an order pursuant to Fed.R.Civ.P. 37(a) compelling Morganroth to answer these questions on the grounds that he had waived any fifth amendment right he had with respect to these questions by answering virtually identical questions in the Florida state foreclosure proceeding and that he had no legitimate fifth amendment right to assert because there was no reasonable likelihood of criminal prosecution, given his acquittal in March 1980, that would flow from the answers requested. The District Court ordered Morganroth to testify at the deposition on the ground that he had waived his fifth amendment rights by testifying in the earlier, separate Florida foreclosure proceeding and that he would suffer no additional legal detriment from testifying. The

District Court did, however, confine the Secretary of Labor to asking only the identical questions asked at the prior deposition.

Morganroth then filed for certification under 28 U.S.C. § 1292(b) asserting that no Supreme Court or Sixth Circuit authority existed on this issue and that the District Court had adopted a rule followed in only one circuit, rejecting the rule followed by a majority of circuits, and applied it erroneously. The District Court granted the motion and certified the question as follows:

When a deponent has testified on October 20, 1979, in a deposition pursuant to a civil proceeding in which he is not a party without invoking his Fifth Amendment privilege against self-incrimination, and later on June 29, 1981, in a separate and unrelated proceeding to which he is also not a party, he refused to answer the same question asked in the earlier deposition on the basis that his answer would further incriminate him, may he do so, or does his earlier testimony constitute a waiver of the privilege, notwithstanding any possible intervening circumstances.

█ In granting Morganroth's petition for leave to appeal, this Court stated that it may consider other issues raised in the order of the District Court even though they were not included in the certified question formulated by the District Court.

The fifth amendment states that "No person shall be . . . compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. The privilege extends not only to answers which would in and of themselves support a criminal conviction, but also to answers which would furnish a link in the chain of evidence needed to prosecute. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). *See also Maness v. Meyers,* 419 U.S. 449, 462, 95 S.Ct. 584, 593, 42 L.Ed.2d 574 (1975); *Kastigar v. United States,* 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972); *Arndstein v. McCarthy,* 254 U.S. 71, 72–73, 41 S.Ct. 26, 26–27, 65 L.Ed. 128 (1920). The fifth amendment privilege not only protects the individual against being involuntarily

called as a witness against himself in a criminal prosecution but also privileges him not to answer questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). *See also Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1 (1977); *Arndstein, supra.*

In this appeal, Morganroth urges that this Court reject the "minority" rule adopted by the District Court, or its application of that rule, and adopt the "majority" rule that waiver of the privilege and voluntary testimony in response to specific questions or a particular subject matter in one proceeding does not constitute a waiver of the fifth amendment privilege with respect to identical questions or a particular subject matter in a second proceeding if the witness remains at risk for the same offense. *United States v. Licavoli,* 604 F.2d 613 (9th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); *United States v. Cain,* 544 F.2d 1113 (1st Cir.1976); *United States v. Lawrenson,* 315 F.2d 612 (4th Cir.1963); *United States v. Miranti,* 253 F.2d 135 (2d Cir.1958). The policy behind the majority rule that the privilege is "proceeding specific" and not waived in a subsequent proceeding by waiver in an earlier one, rests on the thought that during the period between the successive proceedings conditions might have changed creating new grounds for apprehension, *e.g.,* the passage of new criminal law, or that the witness might be subject to different interrogation for different purposes at a subsequent proceeding, or that repetition of testimony in an independent proceeding might itself be incriminating, even if it merely repeated or acknowledged the witness' earlier testimony, because it could constitute an independent source of evidence against him or her. *Miranti, supra,* 140; *In re Corrugated Container Antitrust Litigation, Conboy,* 661 F.2d 1145, 1155 (7th Cir.1981),

*aff'd, Pillsbury Co. v. Conboy,* —— U.S. ——, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983) (hereinafter *Conboy*).

The Secretary of Labor urges that the District Court correctly adopted and applied the minority rule set forth in *Ellis v. United States,* 416 F.2d 791 (D.C.Cir.1969). In *Ellis,* the court held that a waiver of the assertion of a valid privilege in one proceeding, where a witness places himself or herself at risk of prosecution for a particular offense, constitutes a waiver of the privilege in all subsequent proceedings in response to the identical questions or the same general subject matter where the risk of prosecution for the identical offense remains the same. An exception to the minority view exists where new material or new conditions may give rise to further incrimination. *Id.* 802. The rationale behind the minority view of *Ellis* is that, absent intervening circumstances, a witness' repetition of the same information in a subsequent proceeding for which he originally placed himself at risk of prosecution in an earlier proceeding would not expose him to any real danger of legal harm to which he had not already exposed himself by virtue of his prior voluntary testimony. *Id.* The rationale of the minority view of *Ellis* applies only where the witness faces the identical risk of prosecution in both proceedings in which he is called upon to testify. The *Ellis* court's exception recognizes this limitation.

■ We need not reach the issue of whether this Circuit should adopt the majority or minority view on waiver as framed in the question certified by the District Court because we find neither applicable to a factual situation where a fifth amendment privilege is asserted solely because the witness alleges he is apprehensive of providing incriminating evidence in regard to a possible perjury charge stemming from responses in an earlier proceeding under oath.[1] The District Court's adoption and

---

1. We also note that the Supreme Court's recent decision in *Pillsbury Co. v. Conboy,* —— U.S. ——, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983), raises doubt as to the continued validity of the *Ellis* Court's view. In *Conboy,* The Supreme Court emphasized that: "Questions do not in-

application of the minority view is inappropriate in this case because the minority view presumes that the witness is facing identical risks in both proceedings. In contrast, as in this case, once a witness has testified under oath initially, the risk of prosecution which the witness faced in the earlier proceeding is not identical even though the questions may be the same in a subsequent proceeding or the same subject matter covered. Once a witness has testified under oath, he risks the possibility of perjury charges in addition to any risk he may face for prosecution for non-perjury offenses suggested by his testimony. Perjury is a separate crime. The possibility of a perjury prosecution exists whenever an individual takes an oath, in a civil or criminal matter, where the law of the United States authorizes an oath to be administered, and willfully gives testimony material to the inquiry being pursued which, to the individual's knowledge, is false. 18 U.S.C. § 1621. Similar elements are contained in state perjury laws. Within the applicable statute of limitations for a perjury prosecution, an individual's potential exposure to a perjury prosecution growing out of criminal proceedings against him remains viable even though he faces no risk of prosecution for substantive crimes due to double jeopardy or the running of the statute of limitations for the substantive offenses. The federal and state perjury statutes apply with equal force to testimony given under oath in civil matters and criminal matters in which the individual is merely a witness. *Id.* Even immunized testimony is subject to prosecution on the ground of perjury. 18 U.S.C. § 6002. When a witness is asked a question in a subsequent proceeding, the answer to which could show that he has already committed the crime of perjury in a prior proceeding, his refusal to answer is permissible almost by the definition of self-incrimination. The witness is still criminally accountable for his earlier perjury. He may not be convicted out of his own mouth.

■ The risk of prosecution for which Morganroth has articulated a fear of prosecution in this case is that for perjury in his prior testimony. This possibility of prosecution exists independently of and is unaffected by his acquittal of federal conspiracy and mail and wire fraud charges. It is unclear whether he fears perjury charges stemming from his deposition testimony in the Florida state foreclosure proceeding or his New York federal grand jury testimony. Either could provide a basis for a valid assertion of the privilege.[2] Morganroth remains at risk for state and federal perjury prosecutions until the risk is removed by a running of the applicable statute of limitations for perjury or a guilty plea or conviction. Therefore, because Morganroth alleges he is presently at risk for a different crime than those for which he initially faced a reasonable risk of prosecution, the question of whether the minority view should control the waiver issue is not properly raised by the facts.

We do, however, consider another issue raised by the order of the District Court even though not included in the certified question. At issue is what sort of showing must be made by a witness to justify the invocation of the fifth amendment privilege when the only possible risk of prosecution which might flow from testimony in a subsequent proceeding is for perjury.

■ We conclude that it is not enough that Morganroth answer each deposition question propounded by the Secretary of

---

criminate; answers do." *Id.* ——, 103 S.Ct. 613. The Court reasoned that "answers to such questions 'are derived from the deponent's *current,* independent memory of events' and thus 'necessarily create a *new* source of evidence' that could incriminate a witness and could be used in a subsequent criminal prosecution against him." *Id.*

2. It is immaterial whether the basis of Morganroth's alleged fear is from the Florida state foreclosure proceeding or the New York grand jury proceeding. One jurisdiction in our federal system may not, absent an immunity provision, compel a witness to give testimony which might incriminate him under the laws of another jurisdiction. *Murphy v. Waterfront Comm'n of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

Labor with the conclusory statement: "I refuse to answer on the ground that the answer might tend to incriminate me." Morganroth must supply such additional statements under oath and other evidence to the District Court in response to each question propounded so as to enable the District Court to reasonably identify the nature of the criminal charge for which Morganroth fears prosecution, *i.e.,* perjury and to discern a sound basis for the witness' reasonable fear of prosecution.

Before a witness, such as Morganroth, is entitled to remain silent, there must be a valid assertion of the fifth amendment privilege. *See Conboy, supra,* —— U.S. ——, ——, 103 S.Ct. 608, 614 n. 13, 74 L.Ed.2d 430. It is for the court to decide whether a witness' silence is justified and to require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity. *Hoffman, supra.* A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. *Id.* A witness must, however, show a "real danger," and not a mere imaginary, remote or speculative possibility of prosecution. *United States v. Apfelbaum,* 445 U.S. 115, 128, 100 S.Ct. 948, 955–956, 63 L.Ed.2d 250 (1980). *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972); *Rogers v. United States,* 340 U.S. 367, 374–75, 71 S.Ct. 438, 442–443, 95 L.Ed. 344 (1951); *cf., Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). While the privilege is to be accorded liberal application, the court may order a witness to answer if it clearly appears that he is mistaken as to the justification for the privilege in advancing his claim as a subterfuge. *Hoffman, supra,* 341 U.S. 486, 71 S.Ct. 818; *In re Brogna,* 589 F.2d 24, 27 (1st Cir.1979); *Ryan v. Commissioner,* 568 F.2d 531, 539 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify. *See Hoffman, supra,* 341 U.S. 486–88, 71 S.Ct. 818–819.

A witness risks a real danger of prosecution if an answer to a question, on its face, calls for the admission of a crime or requires that the witness supply evidence of a necessary element of a crime or furnishes a link in the chain of evidence needed to prosecute. In *Hoffman,* the Supreme Court held that a real danger of prosecution also exists where questions, which appear on their face to call only for innocent answers, are dangerous in light of other facts already developed. In such a situation a witness bears no further burden of establishing a reasonable cause to fear prosecution beyond asserting the privilege and identifying the nature of the criminal charge or supplying sufficient facts so that a particular criminal charge can reasonably be identified by the court. The witness has met his burden and the court does not need to inquire further as to the validity of the assertion of the privilege, if it is evident from the implications of a question, in the setting in which it is asked, that a responsive answer might be dangerous to the witness because an injurious disclosure could result. *Id.* 486–87, 71 S.Ct. 818–819. In appraising the claim, the court "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." *Id.* 487, 71 S.Ct. 818; *Malloy v. Hogan,* 378 U.S. 1, 34, 84 S.Ct. 1489, 1507, 12 L.Ed.2d 653 (1964) (White, J., dissenting); *United States v. Moreno,* 536 F.2d 1042, 1047 (5th Cir.1976); *Klein v. Smith,* 559 F.2d 189, 200 (2d Cir.1977), *cert. denied,* 434 U.S. 987, 98 S.Ct. 617, 54 L.Ed.2d 482 (1977).

The facts of this case make the *Hoffman* approach to a witness' burden of establishing a foundation for the reasonable cause determination, or rather lack of it, inapplicable. Morganroth is allegedly raising the specter of a perjury prosecution; *i.e.,* his proposed truthful testimony might provide

evidence that he had perjured himself in earlier proceedings under oath. Like *Hoffman,* the questions propounded to Morganroth appear on their face to be innocent. Unlike *Hoffman,* the present setting, in which the questions were propounded and representations made, sheds no light whatsoever on whether Morganroth's proposed truthful answers would constitute injurious disclosures in light of his previous testimony on the same subject matter in earlier proceedings.

The *Hoffman* guidelines for determining whether an assertion of the privilege against self-incrimination should be respected works well in cases in which an individual is at risk of prosecution on substantive charges or in which an individual expresses a concern of perjury prosecution stemming from statements made in earlier proceedings in which the trial judge has a personal familiarity. The *Hoffman* guidelines, however, are of little help in a case such as the one on appeal where the District Court making the privilege determination has no personal knowledge of the scope of content of prior proceedings and where the only possible prosecution for which the witness is at risk is perjury. This is due to the nature of the perjury offense in relation to the assertion of the privilege and the inability of the trial court, in this case and others like it, to draw upon its own knowledge of the case. In *Hoffman,* the Supreme Court stressed facts within the knowledge of the trial court. There the trial court was instructed that the privilege be "evident from the implications of the question *in the setting in which it was asked,*" that the determination be governed "as much by his [trial judge's] personal perception of the particularities of the case as by the facts actually in evidence," and that it consider the "circumstances" of the case. *Hoffman, supra* 341 U.S. 486–87, 71 S.Ct. 818–819 (emphasis added). *Hoffman* is typical of subsequent cases applying the *Hoffman* guidelines. As in *Hoffman,* those cases, in contrast to the one on appeal, reveal a superior knowledge by the trial court of the "setting in which it [the questions to which the privilege is sought] is asked." In *Hoffman,* the peti-

tioner was asked if he knew or was acquainted with the whereabouts of a missing man who was being sought for his connection with violations of a large number of federal statutes. Petitioner had already admitted he knew the missing man but invoked the privilege when asked of his whereabouts. The Supreme Court noted that if he answered the question from which he sought protection under the fifth amendment, his answer would have a strong possibility of implicating him in some of the crimes under investigation or in harboring a fugitive and upheld the trial court's approval of the invocation of his privilege. In *Hoffman,* however, the trial court had some concrete information to work with. First, the petitioner's invocation of the privilege was to protect against the prosecution for substantive crimes. Therefore, the elements of the underlying violation and the necessary facts to support them could be inferred by the trial court. In addition, the Court noted that the trial court had impaneled the grand jury before whom Hoffman refused to testify, was intimately familiar with the purposes of the grand jury investigation and knew that petitioner had a long police record and was widely recognized as a key member of an organized crime underworld. These circumstances, in relation to the nature of the potential prosecution, gave the trial court the ability to make a reasoned inference that Hoffman's answer would tend to incriminate him.

Similarly, in *United States v. Wilcox,* 450 F.2d 1131 (5th Cir.1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 787 (1972), where the perjury/incrimination issue was raised, the trial court making the privilege determination was intimately familiar with the facts. In *Wilcox,* damaging testimony against Wilcox had been given by a witness in two prior trials, each of which resulted in convictions followed by reversals and new trials following appeals. The third time around, the witness refused to testify on the ground that subsequent testimony might provide evidence that he had perjured himself in the earlier proceedings.

The District Court respected his assertion and the witness did not testify in person. Instead, his testimony from the first trial was read into evidence. The trial judge who made the privilege determination was the same judge who had presided at the first two trials, knew of the nature of the testimony and of the grounds for the witness' subsequent assertion. As in *Hoffman*, he was intimately aware of the "circumstances" and "setting" in which the privilege was asserted. He was clearly notified that the testimony offered by the witness, if forced to testify, would differ between the proceedings. *Wilcox, supra,* 1140, nn. 10–11.

This case is in sharp contrast to *Hoffman* and *Wilcox*. The trial court did not have any background familiarity with the setting in which the assertion was raised. The District Court had not participated in either the grand jury matter in New York or the Florida foreclosure proceeding. With respect to the New York grand jury statements, he did not even know the substance of those statements, the nature of the conflicting testimony by other witnesses or contradictory documentary evidence which might tend to show that Morganroth had perjured himself in that proceeding. Nor did Morganroth apprise the District Court that his testimony or deposition answers would differ from statements given in the earlier proceedings. The District Court in this case was merely informed by Morganroth's attorney that there was a possibility that material inconsistencies would exist between his proposed testimony, based on his current memory of the loan transactions, and prior testimony. This possibility, however, exists in every case in which a witness has given prior testimony. Thus, perjury prosecutions which are prospective and possible in nature present special problems in determining appropriate invocation of the fifth amendment right.

Whether a witness risks a "real danger" of prosecution from questions which appear on their face to call for only innocent answers and where the incriminating nature of the answer is not evident from the implications of the question in the setting in which it is asked, is a difficult question left unanswered by *Hoffman*. On one hand, while it is clear that a witness, upon interposing his claim of privilege, is not required to prove the hazard in the sense in which a claim is usually required to be established in court, *Hoffman, supra,* 341 U.S. 486, 71 S.Ct. 818, it is equally clear that a witness' "say so" does not by itself establish the hazard of incrimination. *Id.* Where there is nothing suggestive of incrimination about the setting in which a seemingly innocent question is asked, the burden of establishing a foundation for the assertion of the privilege should lie with the witness making it. *See Moreno, supra,* 536 F.2d 1049; *United States v. Rosen,* 174 F.2d 187, 188 (2d Cir.1949), *cert. denied,* 338 U.S. 851, 70 S.Ct. 87, 94 L.Ed. 521 (1949). We do not hold, however, that a witness has the burden of proof on this issue. A witness presents sufficient evidence to establish a foundation for the assertion of the privilege and shows a real danger of prosecution if it is not perfectly clear to the court "from a careful consideration of all of the circumstances in the case, that a witness is mistaken, and that the answer[s] cannot possibly have such a tendency to incriminate." *Hoffman, supra,* 341 U.S. 488, 71 S.Ct. 819. Stated differently, sufficient evidence is presented by a witness if a court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution. Short of uttering statements or supplying evidence that would be incriminating, a witness must supply personal statements under oath or provide evidence with respect to each question propounded to him to indicate the nature of the criminal charge which provides the basis for his fear of prosecution [3] and, if

---

**3.** With respect to each question for which the privilege is asserted, it is important to the court's reasonable cause determination that Morganroth swear under oath or provide other evidence that the criminal charge for which he has reasonable cause to fear prosecution is perjury. Here he stated only that the issue would tend to incriminate him. This fear may

nécessary to complement non-testimonial evidence, personal statements under oath to meet the standard for establishing reasonable cause to fear prosecution under this charge.[4] Statements under oath, in person or by affidavit, are necessary because the present penalty of perjury may be the sole assurance against a spurious assertion of the privilege. Argument may be supplied by counsel but not the facts necessary for the court's determination.

Public policy also requires that a witness bear the burden of establishing the foundation of the privilege beyond his mere "say so." Unless something more is required in situations such as the one on appeal where seemingly innocent questions exist in a setting presently devoid of incriminating overtones, witnesses such as Morganroth will be the final arbiters of the validity of their asserted privileges. A litigant's right to information must be balanced against a witness' constitutional right to invoke the privilege. Only where there is some real danger can the loss of information to a litigant or to the judicial system be justified. See Emspak, supra, 349 U.S. 205–06, 75 S.Ct. 705–706 (Harlan, J., dissenting). In addition, unless some additional showing beyond the mere assertion of the privilege is required, no witness would ever have to testify twice regarding the same subject matter because the possibility of perjury would always exist in theory.

From the record on appeal, it appears that Morganroth has not met this burden of establishing a foundation necessary for the

valid assertion of the privilege based on his alleged fear of a perjury prosecution. Accordingly, we remand this case to the District Court for further proceedings consistent with this opinion.

NATHANIEL R. JONES, Circuit Judge, dissenting.

The majority reasons that the considerations that were before the Supreme Court in *Pillsbury Co. v. Conboy,* —— U.S. ——, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983), are not implicated in the instant case because of the particular offense for which appellant-Morganroth fears prosecution. The clear holding in *Conboy* is that a district court cannot compel a witness to answer deposition questions over a valid assertion of his Fifth Amendment right, absent a duly authorized grant of immunity at the time the testimony is sought. Thus, when a witness or deponent is accorded a grant of immunity for testimony that is given during one proceeding, a subsequent interrogation pertaining to the same subject matter must be accompanied by a new grant of immunity. The majority concludes that this rule is not applicable to the facts *sub judice* because the witness' attempt to invoke his Fifth Amendment privilege was based upon his fear of prosecution for perjury. The majority further reasons that

> because Morganroth alleges he is presently at risk for a different crime than those for which he initially faced a reasonable risk of prosecution, the question [pertaining to] the waiver issue is not properly raised by the facts.

---

4. have been based on the mistaken belief he could still be prosecuted for some statute of limitations barred offense. While no ritualistic formula or talismanic phrase is necessary to invoke the privilege, *Emspak v. United States,* 349 U.S. 190, 194, 75 S.Ct. 687, 690, 99 L.Ed. 997 (1955), a court cannot be asked to scan all of the law for a possible connection between a question and a criminal offense. To impose such a duty on courts in response to a mere assertion of the privilege, without elaboration, in response to seemingly innocent questions devoid of a setting suggestive of producing injurious disclosures would result in a guessing game in which the witness is the final judge of the claim of privilege. *See Tennesco, Inc. v. Berger,* 144 Ga.App. 45, 240 S.E.2d 586 (1977).

4. Where a witness, such as Morganroth, no longer faces a reasonable risk of prosecution for the underlying substantive crimes, due to a running of the statute of limitations, acquittal, double jeopardy, etc., the court must be apprised of the fear of perjury or at least be aware that a witness has testified before on the same subject matter and that his proposed truthful testimony might provide evidence that his former testimony was false. This is because the court must be able to eliminate the underlying substantive crimes and still find a factual basis from which a reasonable cause to fear criminal prosecution may be found.

*See* Majority Opinion at 166–167. It is upon this basis that I enter my dissent.

My review of the proceedings below indicates that the appellant's response to the numerous questions that were propounded to him was "I refuse to answer on the ground it may incriminate me." During these proceedings, Morganroth's attorney advised the court that if the appellant testified, he ran the risk of possible prosecution for tax evasion.

The majority apparently assumed that since the prosecutor informed the appellant that his answers during the grand jury proceeding contradicted the testimony of other witnesses, the appellant was invoking his right to remain silent in order that he would not perjure himself. However, the appellant declares that he invoked his Fifth Amendment privilege because of the possible threat of *perjury and criminal tax evasion*.[1] Nevertheless, the majority, characterized the issue as follows: "At issue is what sort of showing must be made by a witness to justify the invocation of the Fifth Amendment privilege *when the only possible risk of prosecution* which might flow from testimony in a subsequent proceeding *is for perjury*." This construction of the issue completely ignores appellant's claim of possible prosecution for tax evasion. Therefore, it is upon this basis that I construe the majority's analysis to be in error.

Upon my review of the record, I conclude that this case is appropriate for application of the holding of *Conboy* because the appellant was faced with the possible prosecution for tax evasion; therefore, a second grant of immunity should have been extended to him. Accordingly, I view the facts herein as warranting a reversal of the district court's order compelling the appellant to testify absent a subsequent assurance of immunity for that particular testimony.

---

1. *See* Appellant's brief page 5, n. 1, which reads: Mr. Morganroth asserted his Fifth Amendment privilege to the same set of questions [in the earlier proceeding] to which he asserts his privilege in the instant action. Immunity was then conferred upon Mr. Morganroth, his testimony given, and thereafter he was advised that his testimony was in serious conflict with that of others appearing before the grand jury. This apparent conflict and two possible legal ramifications flowing from it— threatened perjury and criminal tax evasion exposure—constitute in large part the basis for his imposition of his Fifth Amendment privilege in this action.