**In re Thomas D. FRENCH and Cheryl L. French, Debtors.**

**Bankruptcy No. 4–90–7203.**

United States Bankruptcy Court, D. Minnesota.

May 23, 1991.

G. Martin Johnson, Johnson and Wentzell, Ltd., Minneapolis, Minn., Douglas Thomson, Thomson and Ellis, Ltd., St. Paul, Minn., for debtors.

Andrew J. Schmid, Office of U.S. Trustee, Minneapolis, Minn., for U.S. Trustee.

Roylene Champeaux, Asst. U.S. Atty., Minneapolis, Minn., for ASCS.

Robert L. Kalenda, St. Cloud, Minn., for Creditors' Committee.

## MEMORANDUM ORDER

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on the 15th day of March, 1991 on the United States Trustee's motion to convert or to dismiss this Chapter 11 case for failure to answer questions at the meeting of creditors held pursuant to 11 U.S.C. § 341. The appearances were as follows: Andrew Schmid for the United States Trustee; Roylene Champeaux for the United States acting through the Agriculture Stabilization and Conservation Service ("ASCS"); Robert Kalenda for the Unsecured Creditors' Committee (the "Committee"); Frank Miske, III ("Miske"), an unsecured creditor, *pro se*; and G. Martin Johnson and Douglas Thomson for the Debtors. This Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103. Moreover, this Court may hear and finally adjudicate this motion because its subject matter renders such adjudication a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## I. FACTS AND PROCEDURAL HISTORY

The meeting of creditors was first convened on January 29, 1991. Mr. French refused to answer a series of innocuous, preliminary questions based on the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. The United States Trustee suspended the meeting of creditors and moved to convert or to dismiss the Debtors' case. At the initial hearing on said motion, held February 14, 1991, I enquired whether the Debtors had sought immunity under part V of title 18 of the United States Code, 18 U.S.C. § 6001 et seq., as provided in section 344 of the Bankruptcy Code, 11 U.S.C. § 344. Counsel for ASCS indicated that the United States Attorney had declined to seek such immunity on behalf of the Debtors. I then informed the parties that a blanket assertion of the Fifth Amendment was impermissible, and that I would require the Debtors to assert their privilege to each question which would require a potentially self-incriminating answer.

On March 15, 1991, the parties reconvened and completed the examination of the Debtors, except that Mr. French continued to assert the Fifth Amendment privilege regarding six questions he refused to answer:

1. By counsel for ASCS: "Mr. French, how did you come to owe money to Peterson's Feed Mill?"

2. By counsel for the Committee: "Did you transact business transactions through any of these banks or bank accounts that we have just discussed?"

3. By Miske: "And then the other thing that I am wondering if you could tell me exactly how the account became closed at the First National Bank in Anoka?"

4. By Miske: "Was the closing of the account something of your doing or theirs?"

5. By Miske: "Did you receive cash back from this account when it was closed?"

6. By Miske: "Have you cashed any checks through any party, or do you have any parties cashing checks for you so as to show up through your account?"

I held a continued hearing on the United States Trustee's motion following the conclusion of the examination. I indicated

that in determining the propriety of the asserted privilege I was inclined to follow the procedure outlined in the *Connelly* decision. The *Connelly* court held that the debtor should be required to explain under oath *in camera* or by affidavit, either of which would become a sealed record, "the underlying factual basis for his Fifth Amendment Claim." *In re Connelly*, 59 B.R. 421, 445 (Bkrtcy.N.D.Ill.1986). Debtors' counsel objected to this procedure, arguing that the taking of such evidence would be unwarranted because Mr. French currently faces criminal charges. I took the Debtors' objection under advisement.

The record has been supplemented by a transcript of the examination of the Debtors at the meeting of creditors and by a copy of the criminal complaint against Mr. French. Mr. French has been charged with felony theft by swindle and misdemeanor purchase of grain without a license.

The Debtors operate, *inter alia*, a grain hauling business. The complaint alleges that a long-time customer contracted with the Debtors' business to haul several shipments of grain to an elevator for storage in October and November of 1990, but instead Mr. French sold the grain without authorization to Peterson Feed Mill at below market prices and retained the proceeds. The complaint also mentions that other farmers have reported that Mr. French defrauded them of proceeds from grain sales.

## II. DISCUSSION

■ Section 343 of the Bankruptcy Code requires a debtor to "submit to examination under oath at the meeting of creditors under section 341(a) of this title." 11 U.S.C. § 343. The debtor, however, may refuse to answer questions posed during the meeting of creditors based on a valid assertion of the Fifth Amendment privilege against self-incrimination. *In re Connelly*, 59 B.R. at 430; *In re Hulon*, 92 B.R. 670, 673 (Bkrtcy.N.D.Tex.1988). If immunity is not granted[1] and the bankruptcy court de-

termines that the assertion of privilege was valid, the debtor cannot be denied discharge for failing to answer questions. 11 U.S.C. § 727(a)(6). Mr. French has not been granted immunity, and therefore I must decide whether his assertion of the Fifth Amendment privilege was proper.

Mr. French's assertion of the privilege raises three issues for determination. First, I must decide whether the record is sufficient to decide the propriety of Mr. French's assertion of the Fifth Amendment privilege without requiring him to give testimony regarding the basis for such assertion. Second, if I conclude that the record is sufficient, I must decide whether the privilege was properly asserted against each of the six questions not answered. Third, I must decide whether Mr. French has waived his privilege against answering the ASCS' question regarding the debt to Peterson Feed Mill because the Debtors' schedules listed Peterson Feed Mill as having an equitable mortgage against the Debtors' business assets.

### A. Requirement of Testimony

■ The *Connelly* court concluded that without the debtor's testimony under oath, the court could not determine whether answering certain questions posed "a real danger of incrimination, not a remote and speculative possibility." *In re Connelly*, 59 B.R. at 445. But in *Hoffman v. United States*, the leading case on this issue, the Supreme Court warned that requiring such an evidentiary record might vitiate the witness' Fifth Amendment privilege:

[I]f the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question *or an explanation*

1. A debtor may seek immunity under part V of title 18 of the United States Code, 18 U.S.C. § 6001 et seq., for testimony elicited at the meeting of creditors. 11 U.S.C. § 344. Under

the Bankruptcy Act, in contrast, it was not necessary for the debtor to seek immunity, since such immunity was mandated by statute. *In re Hulon*, 92 B.R. at 673.

*of why it cannot be answered* might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

*Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (emphasis added) (citations omitted) (quoting *Ex parte Irvine*, 74 F. 954, 960 (C.C.S.D.Ohio 1896)). To avoid forcing the witness to risk self-incrimination in order to assert the privilege, potential incrimination is generally shown by argument of counsel:

> In practice, the invoker's attorney need only sketch a scenario of how a possible but still unknown response might provide direct or circumstantial evidence of criminal conduct or clues leading to evidence of criminal conduct.

Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062, 1073 (1982).

In peculiar situations, courts have nonetheless required such an evidentiary record (and devised prophylactic measures such as submission of an affidavit or *in camera* testimony along with a sealed record) where relying on argument alone would result in an overly broad application of the privilege. The *Connelly* court, however, adopts these extreme cases as the general rule where a debtor in a bankruptcy case refuses to answer questions at the meeting of creditors.

In *Martin–Trigona v. Gouletas*, an unusual case relied on by the *Connelly* court, a judgment debtor charged with theft, forgery and mail fraud refused to answer questions posed by the judgment creditor in a supplementary proceeding to discover the debtor's assets.[2] *Martin–Trigona v.*

*Gouletas*, 634 F.2d 354, 359 (7th Cir.) (*per curiam*), *cert. denied*, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980). In *Martin–Trigona*, the trial court concluded that it could not surmise how the debtor would risk self-incrimination by answering, or by explaining his refusal to answer, certain questions posed to him. For example, the debtor refused to answer questions regarding his place of birth, his present address, and the existence of litigation to which he was a party. The court of appeals held that the trial court acted properly by requiring an explanation for the refusal to answer such questions:

> Clearly some additional explanation was called for and the district court correctly concluded that Trigona could safely offer additional explanation without risking incrimination from the explanation itself.

*Id.* at 361.

But the court of appeals in *Martin–Trigona* also noted with favor that the trial court had upheld the debtor's refusal to answer many other questions *without requiring the debtor to testify regarding the factual basis for asserting the privilege. Id.* at 360. In contrast, the *Connelly* court required the debtor to give testimony to support his assertion of the privilege regarding each and every question he refused to answer, including questions requesting information far less innocuous than the debtor's date of birth and address. *In re Connelly*, 59 B.R. at 451.

The *Connelly* court also relied heavily on the *Morganroth* decision. *In re Morganroth*, 718 F.2d 161 (6th Cir.1983). The *Morganroth* court, however, felt compelled to provide a lengthy explanation for why the facts of the case before it were distinguishable from the ordinary situation where argument alone was sufficient to establish the basis for asserting the Fifth

---

**2.** Debtors' counsel attempted to distinguish the instant case from the decisions requiring testimony in support of the privilege based on the fact that Mr. French currently faces criminal charges. The *Martin–Trigona* decision, however, required testimony from a debtor who was under indictment:

> [T]he pendency of criminal proceedings does not by itself excuse a witness of his

obligation to give testimony in civil proceedings. Some nexus between the risk of criminal conviction and the information requested must exist.

*Martin–Trigona*, 634 F.2d at 360. The trial court in *Martin–Trigona* required the debtor to establish by testimony that a nexus existed between the criminal charges and the questions he refused to answer.

Amendment privilege. In *Morganroth*, the witness argued that truthfully answering questions identical to those asked in a different proceeding before a different court might risk self-incrimination for perjury in the previous proceeding. The court of appeals concluded that in such peculiar circumstances a statement under oath from the witness was necessary to determine whether the witness' assertion of the Fifth Amendment privilege was proper:

The facts of this case make the *Hoffman* approach to a witness' burden of establishing a foundation for the reasonable cause determination, or rather lack of it, inapplicable.... Unlike *Hoffman*, the present setting, in which the questions were propounded and representations made, sheds no light whatsoever on whether Morganroth's proposed truthful answers would constitute injurious disclosures in light of his previous testimony on the same subject in an earlier proceeding.

The *Hoffman* guidelines [determining propriety of assertion of privilege based on argument rather than testimony] ... works well in cases in which *an individual is at risk of prosecution on substantive charges* or in which an individual expresses a concern of perjury prosecution stemming from statements made in earlier proceedings in which the trial judge has a personal familiarity. The *Hoffman* guidelines, however, are of little help in a case such as the one on appeal where the District Court making the privilege determination has no personal knowledge of the scope of content of prior proceedings *and* where the only possible prosecution for which the witness is at risk is perjury.... [In *Hoffman* ], the petitioner's invocation of the privilege was to protect against the prosecution for substantive crimes. Therefore, the elements of the underlying violation and the necessary facts to support them could be inferred by the trial court.

*Id.* at 167–68 (emphasis added).

One important factor in the *Morganroth* court's opinion was its lack of knowledge of the context of the previous proceeding where the witness may have perjured himself. The *Morganroth* court stressed its lack of such knowledge in order to distinguish the case before it from cases where the judge deciding the privilege issue was familiar with the previous proceeding where the possible perjury occurred. *Id.* at 168–69 (citing *United States v. Wilcox*, 450 F.2d 1131 (5th Cir.1971), *cert. denied sub nom. Wilcox v. United States*, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 787 (1972)). The *Connelly* court apparently saw a parallel between its situation and that of the *Morganroth* court:

This court cannot, *on the present state of the record*, determine with the required particularity whether or not Connelly has properly asserted the Fifth Amendment ... at his § 341 meeting.

*In re Connelly*, 59 B.R. at 434 (emphasis added).

No such parallel, however, is apparent. The "lack of knowledge" factor justified the *Morganroth* court's holding only because the debtor feared prosecution for perjury rather than for a substantive crime. According to the *Morganroth* court, the *Hoffman* decision mandates that where the witness fears prosecution for substantive crimes, he should not be compelled to give testimony explaining his basis for asserting the privilege:

In such a situation a witness bears no further burden of establishing a reasonable cause to fear prosecution beyond asserting the privilege and identifying the nature of the criminal charge or supplying sufficient facts so that a particular criminal charge can reasonably be identified by the court. The witness has met his burden and the court does not need to inquire further as to the validity of the assertion of the privilege, if it is evident from the implications of a question, in the setting in which it is asked, that a responsive answer might be dangerous to the witness because an injurious disclosure could result.

*In re Morganroth*, 718 F.2d at 167 (citing *Hoffman*, 341 U.S. at 486–87, 71 S.Ct. at 818)). There is no indication in the *Connelly* case that the debtor feared prosecution for perjury rather than for a substantive

crime. Yet the *Connelly* court relied on the *Morganroth* decision in holding that the compelling of such testimony is proper.

■ The *Connelly* court could not determine whether the debtor had reasonable cause to apprehend a real danger of self-incrimination because the debtor refused to answer every question put to him at the meeting of creditors.[3] Such a blanket assertion of the Fifth Amendment privilege, of course, is impermissible:

> A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify.

*Id.* (citing *Hoffman,* 341 U.S. at 486–88, 71 S.Ct. at 818–19). But the *Connelly* court could have taken remedial action far less drastic than requiring the debtor to testify under a sealed record to support his assertion, which the *Connelly* court conceded was a criticized procedure. *In re Connelly,* 59 B.R. at 445–46 (citing *In re U.S. Hoffman Can Corp.,* 373 F.2d 622 (3d Cir. 1967)). Such a procedure does not adequately shield the witness against the risk of self-incrimination:

> Revealing his response—even in an *in camera* hearing—would, the courts say, "surrender the very protection which the privilege is designed to guarantee."

Heidt, *supra,* at 1072 (quoting Hoffman, 341 U.S. at 486, 71 S.Ct. at 818).

In the instant case, Mr. French also made a blanket assertion of the privilege, and the United States Trustee and others objected. I responded by informing the Debtors' counsel that a blanket assertion was impermissible and then sent the parties away to reconvene the examination. When the parties returned, only six unanswered questions remained. Based on the record before me, and the argument of counsel, I can determine with the required particularity whether the Fifth Amendment entitles Mr. French to refuse to answer those six questions.

## B. Propriety of Asserted Privilege

■ The *Morganroth* decision summarized the standard to be applied in determining the propriety of an assertion of the Fifth Amendment privilege against self-incrimination:

> A witness risks a real danger of prosecution if an answer to a question, on its face, calls for the admission of a crime or requires that the witness supply evidence of a necessary element of a crime or furnishes a link in the chain of evidence needed to prosecute. In *Hoffman,* the Supreme Court held that a real danger of prosecution also exists where questions, which appear on their face to call only for innocent answers, are dangerous in light of other facts already developed.

*In re Morganroth,* 718 F.2d at 167. The asserted privilege must be upheld unless it is " '*perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Hoffman,* 341 U.S. at 488, 71 S.Ct. at 819 (original emphasis) (quoting *Temple v. Commonwealth,* 75 Va. 892, 898 (1881)). The benefit of the doubt must go to the individual asserting the privilege. *In re Corrugated Container Antitrust Litigation,* 661 F.2d 1145, 1151 (7th Cir.1981), *aff'd sub nom. Pillsbury Co. v. Conboy,* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983).

■ Mr. French is clearly entitled to refuse to answer ASCS' question regarding Peterson Feed Mill's alleged equitable lien, provided he has not waived his Fifth Amendment privilege. The alleged equitable mortgage may have arisen from Mr. French's sales to Peterson Feed Mill of grain he did not own. Those alleged sales

---

3. The *Connelly* court also noted it was forbidden from attending the meeting of creditors. *In re Connelly,* 59 B.R. at 446. The court, however, did not indicate whether it requested the parties to file a transcript of the meeting or if such a transcript was ever filed. In the instant case, I have before me as part of the record a filed transcript of the examination of Mr. French.

**440**

are at the very heart of the criminal complaint against Mr. French. Consequently, Mr. French would face a grave risk of self-incrimination if he truthfully answered ASCS' question. If I were to require Mr. French to answer, he would, in all likelihood, be faced with the "cruel trilemma" of choosing among self-incrimination, perjury, or conversion or dismissal of this case. Heidt, *supra,* at 1085–86.

Mr. French is also entitled to refuse to answer the remaining five questions, all of which involve bank accounts and the cashing of checks. Mr. French must have cashed the checks he received from the alleged, illicit grain sales somewhere. Consequently, there is a reasonable probability that Mr. French would furnish "a link in the chain of evidence needed to prosecute" him if he truthfully answered questions regarding his bank accounts and check-cashing practices. *In re Morganroth,* 718 F.2d at 167. The evidence might assist prosecutors in criminal case presently pending, or it might assist investigators bringing new charges based on the other alleged acts of fraud mentioned in the complaint.

### C.  Waiver

ASCS' waiver argument was neither extensively argued at the hearing nor briefed by the parties. Consequently, I will permit the parties to file supplemental memoranda regarding this issue.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. The United States, if it so desires, shall have ten days from the date this order is entered to file a supplemental memorandum regarding Mr. French's alleged waiver of his Fifth Amendment privilege against answering the question posed to him by counsel for the United States at the meeting of creditors;

2. The Debtors shall have five days from the date their counsel receives a copy of the United States' memorandum to file a supplemental memorandum regarding said alleged waiver; and

3. The United States Trustee's motion to convert or to dismiss this case shall be continued until such time as the waiver issue is resolved.