# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

IN THE MATTER OF THE ENFORCEMENT OF A SUBPOENA.

Suffolk. June 12, 2001. - August 17, 2001.

Present: MARSHALL, C.J., IRELAND, SPINA, SOSMAN, & CORDY, JJ.

*Constitutional Law*, Self-incrimination. *Commission on Judicial Conduct. Conspiracy.*

A former member of the Commission on Judicial Conduct (respondent) failed to establish a proper basis on which to invoke the protection of the privilege against self-incrimination during proceedings against two judges, in connection with which the commission was investigating whether there had been a violation of G. L. c. 211C, § 6, the commission's internal confidentiality policy, where the respondent's possible testimony and document production pursuant to G. L. c. 211C, § 5(4), could not incriminate him, or place him at risk of being prosecuted for conspiracy. [2-6]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 19, 2001.

The case was heard by *Greaney*, J.

*David Berman* for the respondent.

*Robert J. Muldoon, Jr.* (*Pamela A. Zorn* with him) for Commission on Judicial Conduct.

IRELAND, J. The respondent appeals from an order of a single justice of this court enforcing a subpoena compelling him to testify and produce documents. He argues that the single justice erroneously ruled that he was not permitted to assert the privilege against self-incrimination because his possible testimony and document production could not incriminate him. We affirm the order of the single justice.

1. *Statement of facts.* The respondent is a former member of the Commission on Judicial Conduct (Commission). Currently, the Commission has instituted proceedings against two judges, in connection with which the Commission is investigating whether there has been a violation of G. L. c. 211C, § 6. Pursuant to G. L. c. 211C, § 5 (4), and as part of its investigation of this matter, the Commission subpoenaed the respondent to produce documents and to testify about potential judicial misconduct and his own conduct as a member of the Commission. In response, the respondent notified the Commission of his intent not to comply with the subpoena and to assert the privilege against self-incrimination derived from the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. He maintains that his conduct, if it violated the Commission's internal confidentiality policy, could establish criminal liability against him. The Commission petitioned the county court to compel compliance with the subpoena. Finding that the respondent was not at risk of facing criminal liability, the single justice ordered the enforcement of the subpoena. The respondent appealed to the full court. Because we conclude that the single justice neither abused his discretion nor made a clear error of law, we affirm. Cf. *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 602-603 (2000).

2. *Discussion.* "A person's right to be free from self-incrimination is a fundamental principle of our system of justice, secured by the Fifth Amendment to the United States Constitution and by art. 12 of the Massachusetts Declaration of Rights." *Commonwealth* v. *Borans*, 388 Mass. 453, 455 (1983). The

privilege should be construed liberally in favor of the claimant. *Id.*, and cases cited. We apply broad standards, consistent with Federal standards, in determining whether a claim of the privilege against self-incrimination is justified. *Commonwealth v. Martin*, 423 Mass. 496, 502 (1996). See *Commonwealth v. Funches*, 379 Mass. 283, 289 (1979). Under these highly protective standards, "[a] witness may invoke his privilege against self-incrimination and refuse to testify unless it is perfectly clear that his testimony cannot possibly incriminate him." *Commonwealth v. Tracey*, 416 Mass. 528, 538 (1993). See *Hoffman v. United States*, 341 U.S. 479, 488 (1951).

Nonetheless, the privilege's "prophylaxis is not available to all comers in all circumstances merely because they have the presence of mind to chant the accepted constitutional liturgy. To the contrary, the prospective witness must at the very least show he is faced with some authentic danger of incrimination." *United States v. Castro*, 129 F.3d 226, 229 (1st Cir. 1997), cert. denied, 523 U.S. 1100 (1998). "The central standard for the privilege's application has been whether the claimant is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53 (1968). A witness must demonstrate that he is faced with the "reasonable possibility that, by testifying, he may open himself to prosecution." *United States v. Castro, supra.* See *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). Furthermore, the respondent "is not exonerated from answering merely because he declares that in so doing he would incriminate himself — his say-so does not of itself establish the hazard of incrimination." *Hoffman v. United States, supra* at 486. "[T]he court may order a witness to answer if it clearly appears that he is mistaken as to the justification for the privilege in advancing his claim as a subterfuge." *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983). "It is for a judge, rather than a witness or his attorney, 'to decide whether a witness'[s] silence is justified.' " *Commonwealth v. Martin, supra* at 502, quoting *In re Morganroth, supra* at 167. Applying these standards, we conclude that the respondent has not established a proper basis on which to invoke the protection of the privilege.

The respondent contends that if, pursuant to the subpoena, he

is forced to testify and turn over certain documents, he will be placed at risk of being prosecuted for violating G. L. c. 211C, § 6 (1), which mandates confidentiality with respect to all proceedings of the Commission.[1] Conceding that G. L. c. 211C does not provide a penalty for a violation of § 6 (1), the respondent argues that he is at risk of being prosecuted under G. L. c. 279, § 5.[2] However, we agree with the single justice that G. L. c. 279, § 5, does not apply. That statute "addresses the appropriate punishment for *crimes* where punishment has not been designated by statute" (emphasis added). *Commonwealth* v. *Barsell*, 424 Mass. 737, 742 (1997). A violation of G. L. c. 211C, § 6 (1), is not a crime; § 6 (1) is not a criminal statute. Rather, it simply imposes an obligation on the Commission to ensure the confidentiality of its proceedings. Furthermore, G. L. c. 279, § 5, merely allows for appropriate punishments for defined crimes; it does not *create* criminal liability where none exists, and consequently, cannot operate to render the respondent's noncriminal violation criminal.[3] See *Sheehan, petitioner*, 254 Mass. 342, 345 (1926) ("The definition of crimes . . . so far as not left to the common law,

---

[1]General Laws c. 211C, § 6 (1), provides: "Except as provided in this section, all proceedings of the commission shall be confidential until there has been a determination of sufficient cause and formal charges have been filed with the supreme judicial court. The commission shall ensure that a procedure applicable to commission members, counsel and staff is established for enforcing confidentiality."

[2]General Laws c. 279, § 5, provides: "If no punishment for a crime is provided by statute, the court shall impose such sentence, according to the nature of the crime, as conforms to the common usage and practice in the commonwealth. If a person is convicted of a misdemeanor punishable by imprisonment, he may, unless otherwise expressly provided, be sentenced to imprisonment either in the jail or in the house of correction."

[3]The respondent relies on *Commonwealth* v. *R.I. Sherman Mfg. Co.*, 189 Mass. 76 (1905), in arguing that a violation of the statute constitutes a crime. This case involved the appropriation of the seal of the Commonwealth for advertising or commercial purposes, in contravention of a statute prohibiting such use. The court held that "as an act committed, or omitted, in violation of a public law, either forbidding or commanding it" the misappropriation was a crime. *Id.* at 81, quoting 4 Blackstone, Commentaries 5. The statute in question, however, contained an express prohibition of specific acts (by comparison, G. L. c. 211C, § 6 [1], merely commands that the Commission establish procedures to enforce confidentiality). Because the statute did not provide a penalty for its violation, the court employed Rev. L. c. 220, § 4 (1902), the predecessor to G. L. c. 279, § 5, to impose a sentence. *Id.*

belong[s] to the Legislature"). As such, it was not erroneous for the single justice to conclude that "[t]he respondent is in no danger of incrimination for violating G. L. c. 211C."

Equally untenable is the respondent's contention that he will be prosecuted for conspiracy. Certainly, our definition of conspiracy is broad. See *Commonwealth* v. *Gill*, 5 Mass. App. Ct. 337, 340 (1977) (crime of conspiracy not restricted to arrangements having criminal objective or contemplating use of criminal means to accomplish lawful objective); *Commonwealth* v. *Hunt*, 4 Met. 111, 123 (1842). However, "it is clear, that it is not every combination to do unlawful acts, to the prejudice of another by a concerted action, which is punishable as conspiracy." *Id.* at 124. We have held that "the term 'unlawful,' as used in the criminal conspiracy cases (where neither a criminal object nor criminal means are in contemplation), is limited in any event to a narrow range of situations, (a) where there is strong probability . . . that the execution of the plan by group action will cause such significant harm to an individual or to the general public, as to be seriously contrary to the public interest, and (b) where the unlawfulness of the objective or contemplated means is substantial and clear." *Commonwealth* v. *Bessette (No. 1)*, 351 Mass. 148, 154 (1966).

Here, the respondent's alleged noncriminal violation of G. L. c. 211C, § 6 (1), concerned the *internal* Commission proceedings and the *internal* enforcement of confidentiality. There is no showing that it affected any individual or the general public; the harm was to the Commission and the important work it conducts. As such, "the illegal but non-criminal element [did not] cause prejudice to the general welfare or oppression of the individual of sufficient gravity to be injurious to the public interest." *Commonwealth* v. *Dyer*, 243 Mass. 472, 485 (1922), cert. denied, 262 U.S. 751 (1923). See *Commonwealth* v. *Gill*, *supra* at 341, quoting *Commonwealth* v. *Bessette (No. 1)*, *supra* at 154 (illegal, but noncriminal elements must "cause such significant harm . . . to the general public, as to be seriously contrary to the public interest" to constitute conspiracy). Consequently, the respondent's testimony and document production do not place him at risk of being prosecuted for conspiracy. As such, the single justice's holding that "the respondent's fear

of incrimination of a charge of conspiracy is in the realm of the fanciful, not the possible" is not erroneous.

*Order affirmed.*