In re David A. **CRABTREE** a/k/a West Knoxville Investment Company, Debtor.

In re C.H. **BUTCHER**, Jr., Debtor.

The **FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION** as Receiver for American Savings and Loan Association, Plaintiff,

v.

D. Broward **CRAIG**, Trustee of David A. Crabtree a/k/a West Knoxville Investment Company, Inc. and James A. Martin, Trustee of C.H. Butcher, Jr., Defendants.

Bankruptcy Nos. 3–83–01116, 3–83–01008.

Adv. No. 3–87–0034.

United States Bankruptcy Court, E.D. Tennessee.

Sept. 28, 1988.

---

See also, 79 B.R. 747.

Walt, Dyer & James, Robert E. Craddock, Memphis, Tenn., Pamela G. Steele, Knoxville, Tenn., for plaintiff.

Cadwalader, Wickersham & Taft, Mark C. Ellenberg, James F. Wallack, Washington, D.C., Walker & Walker, John A. Walker, Jr., Knoxville, Tenn., for defendant, D. Broward Craig, Trustee of David A. Crabtree a/k/a West Knoxville Inv. Co., Inc.

Weinberger, Weinstock, Sagner, Stevan & Harris, P.A., Neal S. Melnick, Baltimore, Md., James R. Moore, Knoxville, Tenn., for defendant, James R. Martin, Trustee of C.H. Butcher, Jr.

## MEMORANDUM ON PLAINTIFF'S MOTION TO ADMIT INTO EVIDENCE THE DEPOSITION OF AN UNAVAILABLE WITNESS

RICHARD S. STAIR, Jr., Bankruptcy Judge.

Plaintiff filed a "Motion To Admit Into Evidence The Deposition Of An Unavailable Witness" on July 7, 1988. By its motion plaintiff seeks an order allowing into evidence, pursuant to Fed.R.Civ.P. 32(a), incorporated into Fed.R.Bankr.P. 7032, parts of prior deposition testimony of the debtor, David A. Crabtree (Crabtree), as follows: [1] testimony at § 341(a) meeting of creditors held May 23, 1984; deposition taken May 23, 1984, in the Crabtree bankruptcy case; and deposition taken June 3 and 4, 1985, in the C.H. Butcher, Jr. bankruptcy case. The present adversary proceeding was commenced by the filing of plaintiff's complaint on March 5, 1987.

The issues raised in this proceeding involve mixed core and noncore matters. 28 U.S.C.A. § 157(b)(2) and (c)(1) (West Supp. 1988). To the extent the court is called upon to resolve issues involving noncore matters, the parties have consented to the entry of appropriate orders and judgments

---

1. Fed.R.Civ.P. 32(a) provides in material part: **Use of Depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof....

by the bankruptcy judge. 28 U.S.C.A. § 157(c)(2) (West Supp.1988).

## I

On August 31, 1982, American Savings and Loan Association (American) loaned $2,500,000 to Lone Mountain Corporation (Lone Mountain), a wholly-owned subsidiary of West Knox Investment Co., Inc. (West Knox).[2] West Knox guaranteed this indebtedness. Lone Mountain subsequently defaulted on the loan and American foreclosed a mortgage on real estate partially securing the indebtedness. Plaintiff, in its capacity as receiver for American, looked to the guarantor, West Knox, to satisfy the deficiency.[3]

Plaintiff contends that the principal asset of West Knox was an eighty (80%) percent interest in Broadcast Leasing, Ltd. (Broadcast), a Tennessee limited partnership. The remaining twenty (20%) percent of Broadcast was owned by the debtor, C.H. Butcher, Jr. Broadcast sold its assets to Hess Broadcasting Company, Inc. (Hess) for approximately $3,000,000 in July, 1983. The proceeds from this transaction were distributed in the following manner: $1,300,000 to Norris Industries Company, Inc. (Norris Industries) in consideration for the issuance of shares of Norris Industries stock to West Knox; $1,700,000 to two trust accounts in Northern Trust Bank of Florida for the benefit of West Knox and C.H. Butcher, Jr.

On February 10, 1984, a Consent Order was entered by this court in Adversary Proceeding No. 3–83–0965 directing the turnover of the $1,700,000 placed in trust for the benefit of West Knox and C.H. Butcher, Jr., to the defendant-trustees. Pursuant to an order of stipulation and dismissal dated January 30, 1984, the defendant-trustees obtained possession of the Norris Industries stock issued to West Knox.[4]

In its complaint, plaintiff contends it is entitled to eighty (80%) percent of the $1,700,000 transferred to the defendants by West Knox and eighty (80%) percent of the stock of Norris Industries obtained by the trustees.[5] Additionally, plaintiff seeks prejudgment and post-judgment interest.

Crabtree is presently incarcerated in the Federal Prison Farm at Eglin Air Force Base, Pensacola, Florida. While so confined, he was indicted on April 24, 1987, by a federal grand jury under 18 U.S.C.A. § 371 (West 1966) for one count of conspiracy to commit bank fraud and mail fraud and to impair, impede, and obstruct the Internal Revenue Service in its duty to assess and collect taxes and, under 18 U.S.C.A. §§ 2 and 1341 (West 1984), for four counts of a scheme to defraud Southern Industrial Banking Corporation and mail fraud.[6] At the present time, no date has been fixed for trial on this indictment.

---

2. Subsequent to this transaction, West Knox, a Florida corporation, changed its name to Florida Investment and Leasing Company, Inc. This Memorandum will continue to refer to this entity as West Knox. West Knox and West Knoxville Investment Company, Inc., an alter ego of Crabtree, are separate entities.

3. The factual background matters discussed in this and the succeeding paragraph have not been conclusively established, but merely represent allegations set forth in plaintiff's complaint. For purposes of plaintiff's motion, the court has not concerned itself with the extent to which these facts might be disputed.

4. Plaintiff, in its theories of recovery, states: "The Norris stock was turned over to the defendants pursuant to an order of stipulation and dismissal dated January 30, 1984." Joint Pretrial Order entered September 19, 1988, at p. 4. The court will accept plaintiff's assertion; however, no such order of stipulation and dismissal

has been docketed in either the Crabtree or Butcher case files nor was any order docketed in Adversary Proceeding No. 3–84–0026 as alleged by plaintiff in its complaint.

5. In the briefs filed in support of the parties' respective positions, little argument is addressed to the Norris Industries stock acquired by defendants from West Knox. This is presumably explained by the fact that Norris Industries is a debtor in this court under Chapter 7.

6. The April 24, 1987 indictment represents the third indictment returned against Crabtree. His present incarceration is attributable to a fifteen (15) year sentence imposed on a May 10, 1984 conviction of bankruptcy fraud under 18 U.S.C.A. §§ 2 and 152 (West 1969). On April 23, 1987, Crabtree was convicted of conspiracy to defeat the bankruptcy laws under 18 U.S.C.A. § 371 (West 1966) and of aiding and abetting to defeat the bankruptcy laws under 18 U.S.C.A. §§ 2 and

Pursuant to an order entered in this proceeding, the parties deposed Crabtree at the Eglin Air Force Base Prison Facility on January 26, 1988. Asserting his Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the Constitution, Crabtree refused to respond to questions unless granted immunity from prosecution for anything about which he testified. He stated that the statute of limitations has not run on matters involved in the instant adversary proceeding; that he fears his testimony will be used against him pursuant to Fed.R. Evid. 404(b) in the pending criminal proceeding; and that he is concerned his testimony will be a basis for additional prosecution by the government. *Deposition of David A. Crabtree*, January 26, 1988, p. 4–8. After stating the basis for his refusal to testify, specific questions were asked Crabtree to which he answered: "Same response."

At a hearing on plaintiff's motion on August 11, 1988, the attorney for defendant Martin represented to the court that he had requested the United States Attorney to grant Crabtree immunity. However, the United States Attorney would not agree even to qualified immunity from prosecution for anything Crabtree testifies to in this proceeding.

## II

If plaintiff is to utilize Crabtree's prior testimony under Fed.R.Civ.P. 32(a), it must satisfy the requirements set forth in Fed.R. Evid. 804 which provides in material part:

**Rule 804. Hearsay Exceptions; Declarant Unavailable**

**(a) Definition of unavailability.–**

"Unavailability as a witness" includes situations in which the declarant—

. . . .

(5) is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means.

. . . .

**(b) Hearsay exceptions**

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

**(1) Former testimony**

Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Defendants contend Crabtree is not "unavailable" within the context of Fed.R. Evid. 804(a)(5), but that if he is determined to be "unavailable" they did not have "an opportunity and similar motive to develop [his] testimony" at the time the prior testimony was given.

### III

### FED.R.EVID. 804(a) CRABTREE'S UNAVAILABILITY

Plaintiff contends that Crabtree is "unavailable" within the purview of Fed.R. Evid. 804(a)(5) because he refused to respond to questions at the January 26, 1988 deposition taken in this proceeding. Martin responds that Crabtree is not "unavailable" under the standard set forth by the Sixth Circuit in *Donovan v. Fitzsimmons (In re Morganroth)*, 718 F.2d 161 (6th Cir. 1983).

In *Morganroth*, the court was confronted with a witness who answered each deposition question with the conclusory statement: "I refuse to answer on the ground that the answer might tend to incriminate me." *Id.* at 167. Finding this response unsatisfactory, the court enunciated the following procedure:

[The witness] must supply such additional statements under oath and other evi-

152 (West 1969 and Supp.1988). The April 23, 1987 conviction resulted in a five (5) year sen-

tence which runs consecutively to the May 10, 1984 sentence.

dence to the District Court in response to each question propounded so as to enable the District Court to reasonably identify the nature of the criminal charges for which [the witness] fears prosecution ... and to discern a sound basis for the witness' reasonable fear of prosecution.

Before a witness ... is entitled to remain silent, there must be a valid assertion of the fifth amendment privilege. It is for the court to decide whether a witness' silence is justified and to require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity. A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. A witness must, however, show a "real danger," and not a mere imaginary, remote or speculative possibility of prosecution. While the privilege is to be accorded liberal application, the court may order a witness to answer if it clearly appears that he is mistaken as to the justification for the privilege in advancing his claim as a subterfuge. A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify.

*Morganroth* at 167 (citations omitted).

In summary, applying the *Morganroth* standard requires that the question be placed to the witness who invokes the Fifth Amendment privilege at that time and explains the basis for the assertion of the privilege. The court subsequently determines if the privilege has been properly asserted in response to the proffered question. *See also United States v. Mahar,* 801 F.2d 1477, 1495–96 (6th Cir.1986) (*Morganroth* standard requires trial court to compel witness subpoenaed for trial to take the witness stand and assert Fifth Amendment privilege to specific questions).

Applying the *Morganroth* standard to the matter before this court requires attention to Crabtree's unique circumstances. Crabtree is not raising an imaginary or speculative danger. He is a convicted felon[7] confronted with yet another criminal indictment charging him with, inter alia, bank and mail fraud. At the January 26, 1988 deposition, he cited his belief that the government was going to use deposition testimony provided in the instant proceeding against him in its pending criminal action in order to show a pattern of continuing criminal activity. He further expressed fear that his testimony could produce new and additional criminal charges.

A strict application of the procedure established in *Morganroth* and *Mahar* requiring Crabtree to specifically state the basis for his assertion of the privilege to each question would be unnecessary in a situation such as this one. The court believes the *Morganroth/Mahar* standard has been met by Crabtree as he has testified in detail to the basis for his assertion of the Fifth Amendment privilege, albeit not in response to each question.

Further, assuming a ruling that Crabtree's assertion of the privilege is in error, the court's ability to punish him for continued noncompliance would be minimal. He is currently incarcerated in a federal penitentiary. Imposition of an additional sentence is possible if he is convicted of the charges arising out of the April 24, 1987 indictment. Finally, if the court were to compel Crabtree's appearance at trial as a witness, it would be at considerable expense to the United States and/or the parties with predictable unproductive results.

■ In order to overcome Crabtree's refusal to testify, the defendants suggest that Crabtree could testify under a grant of immunity or that his testimony could be placed under seal. The court does not agree. Courts lack the power to immunize witnesses asserting the Fifth Amendment privilege. *See Mahar* at 1495, n. 32, and *United States v. Pennell,* 737 F.2d 521, 526–28 (6th Cir.1984).

**7.** See *supra,* n. 6.

Arguably, Fed.R.Civ.P. 26(c), incorporated into Fed.R.Bankr.P. 7026, would empower the court to issue a protective order sealing a transcript of Crabtree's deposition. However, the practical aspects relative to such an order make this approach implausible because it creates additional problems. Assuming the materiality of Crabtree's testimony, would the privilege nonetheless be violated by reference to that testimony in the court's opinion? Further, what is to preclude a grand jury from subpoenaing the court reporter and attorneys participating in the deposition in an effort to determine whether Crabtree made incriminating statements? Finally, an order sealing deposition testimony is subject to appellate review and the constitutional implications of such an order might well mandate the granting of an interlocutory appeal which would delay substantially the trial of this proceeding.[8]

The court does not believe defendants' suggestions that Crabtree should be granted immunity or that his testimony should be sealed under the provisions of a protective order to be meritorious. The court believes Crabtree has reasonable cause to invoke his Fifth Amendment privilege. Crabtree is, therefore, "unavailable" as a witness within the context of Fed.R.Evid. 804(a).

## IV

## OPPORTUNITY AND SIMILAR MOTIVE FED.R.EVID. 804(b)(1)

■ Plaintiff argues a line of cases out of the Sixth Circuit which discuss "similar motive" under Fed.R.Evid. 804(b) and the use of prior testimony. These cases involve expert medical testimony taken by deposition in one case and subsequently tendered for use in three other cases after the death of the deponent doctor. The

Sixth Circuit found, with the exception of one case, that the "predecessor in interest" to the defendants in the three later cases had the same motive as the later defendants had in questioning the doctor.[9] Therefore, the "similar motive" requirement of Fed.R.Evid. 804(b)(1) was established and the doctor's testimony admitted into evidence at the later trials. *See Clay v. Johns–Manville*, 722 F.2d 1289 (6th Cir. 1983), *cert. denied*, 467 U.S. 1253, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984); *Murphy v. Owens–Illinois*, 779 F.2d 340 (6th Cir. 1985); *Dykes v. Raymark*, 801 F.2d 810 (6th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1975, 95 L.Ed.2d 815 (1987). *See also, United States v. Licavoli*, 725 F.2d 1040 (6th Cir.1984), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984) (testimony of government witness at state murder trial admissible at defendant's later federal court RICO trial).

The above cases require the trial court to determine from an examination of the facts whether the party opposing the introduction of the prior testimony had a similar motive or interest in examining the witness at the time the prior testimony was given as it has at present. Plaintiff contends that defendants' motives in developing Crabtree's testimony at the times the prior depositions were taken in 1984 and 1985 are similar to their motives in the instant proceeding, i.e., "to discover or retain assets of the bankrupt." *Memorandum In Support Of Plaintiff's Motion To Introduce Into Evidence The Deposition Of An Unavailable Witness*, p. 7.

In response, Craig argues that at the time Crabtree's prior testimony was given the plaintiff had not asserted a claim to the $1,700,000 recovered by the trustees; nor had Martin asserted a cross-claim to a por-

---

8. *See In re Knoxville News Sentinel Co., Inc.*, 723 F.2d 470 (6th Cir.1983) (a district court's determination on the sealing of its own record is not insulated from review).

9. For purposes of Fed.R.Evid. 804(b)(1), "predecessor in interest" is defined by the Sixth Circuit to denote a party who in a former suit "[had] a like motive to cross-examine about the same

matters as the present party would have [if] accorded an adequate opportunity for such examination...." *Clay v. Johns–Manville*, 722 F.2d 1289, 1295 (6th Cir.1983) (quoting *Lloyd v. American Export Lines, Inc.*, 580 F.2d 1179, 1187 (3rd Cir.1978), *cert. denied*, 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978)).

tion of this money.[10]  Therefore, Craig contends he had no significant interest in examining Crabtree on this transaction at the time of Crabtree's prior testimony.  Martin contends that at the time the prior depositions were taken he lacked the motive to question Crabtree about the $1,700,000 because the plaintiff had not yet asserted a claim for these funds.

Defendants' arguments are meritorious.  A comparison of the questions asked Crabtree at the three prior depositions with those questions asked at the January 26, 1988 deposition supports defendants' contentions.  At the January 26, 1988 deposition, the parties explored areas relevant and specific to the present action including: Crabtree's interest in West Knox and Broadcast Leasing; the authenticity of Crabtree's signature on documents executed on behalf of West Knox; the sale of Broadcast Leasing assets to Hess; transfer of the $1,700,000 sale proceeds; and whether West Knox guaranteed the Lone Mountain loan.

In contrast, questions propounded Crabtree during the prior depositions were of a general nature.  Clearly, attorneys participating in the prior depositions were seeking information about Crabtree's assets generally, his numerous business interests, and his associates.  The prior testimony plaintiff now seeks to introduce relates to some of the issues in question in the present litigation, but only generally or peripherally.

Plaintiff's claim to a portion of the $1,700,000 appears to have been unknown to the defendants at the time Crabtree gave his prior testimony.  Thus the defendants lacked the motive to inquire into the matters at issue in the case *sub judice.*

Further, both defendants lacked an opportunity to develop Crabtree's testimony at the prior depositions.  The Sixth Circuit has noted:

Rule 804(b)(1) requires that the party against whom the evidence is offered or a predecessor in interest must have an opportunity to develop the testimony by direct, cross, or redirect examination.  The opportunity to examine the declarant provides safeguards similar to the circumstantial guarantees of trustworthiness found in other exceptions to the hearsay rule....  If a meaningful opportunity to develop the former testimony was not afforded, then the testimony may properly be assumed to be less reliable.  Furthermore, fairness requires that a party ... should not be burdened by an inadequate examination conducted by a predecessor in interest.  This consideration, however, is closely related to the need to admit only former testimony which has been adequately tested by full examination because a party ... is prejudiced only to the extent that unreliable hearsay is admitted; thus, the opportunity for full examination of the declarant serves to protect both the court and the parties from unreliable evidence.

*United States v. Paducah Towing Company, Inc. (In the Matter of the Complaint of Paducah Towing Company)*, 692 F.2d 412, 418 (6th Cir.1982).

Plaintiff argues that *Paducah* is distinguishable "because one or both defendants were given ample opportunity to develop the testimony of the witness."  *Memorandum In Support Of Plaintiff's Motion To Introduce Into Evidence The Deposition Of An Unavailable Witness* at p. 9.  Martin, however, asserts that there was no meaningful opportunity to examine Crabtree on the issues presently in conflict as neither defendant was aware of the plaintiff's future claim or the basis for that claim.  Thus, Martin contends Crabtree's prior testimony lacks reliability.

Martin's argument is persuasive.  The defendants did not have an opportunity to

---

**10.**  The $1,700,000 was recovered by the defendant-trustees in Adversary Proceeding No. 3–83–0965.  As a result of a stipulation entered into by the respective trustees, the estates of Crabtree and Butcher each received $854,179.15 without prejudice to the rights of the trustees to seek a reallocation of the funds if either discov-ered information establishing his right to receive more than fifty (50%) percent of the funds.  Martin, through his cross-claim filed April 8, 1987, contends he is entitled to the entire $1,700,000 and seeks to recover the $854,-179.15 received by Craig plus interest from the Crabtree estate.

examine Crabtree relative to plaintiff's claim asserted in the present adversary proceeding as they were unaware of that claim. More importantly, at the time the three prior depositions were taken, the defendant-trustees had already recovered the $1,700,000 together with the Norris Industries stock. These assets would not, therefore, appear to have been relevant to any examination of Crabtree.

## V

For reasons stated above, the court concludes that while Crabtree is unavailable as a witness within the context of Fed.R.Evid. 804(a) his prior testimony given May 23, 1984, and June 3 and 4, 1985, does not meet the hearsay exception of Fed.R.Evid. 804(b)(1). Crabtree's prior testimony will accordingly be excluded as hearsay not within the exception under Fed.R.Evid. 804(b)(1). An appropriate order will enter.