In re Harry Paul ENDRES, Jr. and Adell Margaret Endres, f/d/b/a Godfather Pizza, Debtors.

MARINE MIDLAND BANK, N.A., Plaintiff,

v.

Harry Paul ENDRES, Jr. and Adell Margaret Endres, Defendants.

Bankruptcy No. 88–00026.
Adv. No. .88–0036.

United States Bankruptcy Court, N.D. New York.

April 7, 1989.

Hancock & Estabrook, Syracuse, N.Y., for plaintiff (Thomas C. Buckel, Jr., of counsel).

Scott, Sardano & Pomeranz, Syracuse, N.Y., for defendants (Roger Scott, of counsel).

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter comes before the Court on the motion of Marine Midland Bank, N.A. ("Marine") for sanctions against Harry Paul Endres, Jr. and Adell Margaret Endres f/d/b/a Godfather Pizza ("Debtors") on their failure to comply with an Order compelling discovery, pursuant to Rule 37 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") and Bankruptcy Rule ("Bankr.R.") 7037. After being brought on by Order To Show Cause, the matter was argued on October 25, 1988 in Syracuse, New York. Decision was reserved.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the instant core proceeding pursuant to 28 U.S. C.A. §§ 1334 and 157 (West Supp.1989). Bankr.R. 7030, 7037 and 7052, 7065, 9014 and 9017 provide the governing framework.

### FACTS

The Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1988) ("Code"), on January 11, 1988 in the Northern District of New York, listing assets and liabilities of $172,006.00 and $228,005.00, respectively. The Order containing notice of the first meeting of creditors pursuant to Code § 341 also fixed April 8, 1988 as the deadline for filing complaints under Code § 523(c).

Marine filed the underlying adversary proceeding on April 7, 1988, seeking the nondischargeability of the sum of $73,-650.00 under Code §§ 523(a)(2)(A), (4) and

(6). Marine alleged that this debt arose from the cashing of fourteen checks on Debtor Harry Endres' behalf in the last half of December 1984 and drawn on the Debtors' bank account at the Oswego City Savings Bank, which they knew had insufficient funds, and then submitted for encashment at Marine's branch office in Oswego, New York. The issuance of the summons by the Bankruptcy Clerk on April 22, 1988 was followed by the Debtors' filing of a general denial answer on May 20, 1988 pleading the complaint's untimeliness and the doctrine of res judicata and/or collateral estoppel as affirmative defenses. Trial was scheduled for September 28, 1988 in Utica, New York.

On August 8, 1988, Marine served notice on the Debtors for oral depositions to be conducted on August 23, 1988 pursuant to Fed.R.Civ.P. 30 and Bankr.R. 7030.

In a letter dated August 17, 1988, Debtors' counsel informed Marine that the Debtors had moved out of state and when they obtained a permanent address in the near future, Marine could reschedule the oral examinations in their new state.

In a notice dated September 15, 1988, the Bankruptcy Clerk reset the trial date to October 28, 1988.

On September 22, 1988, Marine moved for an Order compelling the Debtors to submit to oral depositions pursuant to Bankr.R. 7030 and 7037, citing its "entitlement", as part of legitimate pre-trial preparation, to depose the Debtors in the Northern District of New York. The Debtors' attorney filed an opposing affidavit on October 4, 1988 and relied upon Fed.R.Civ.P. 45(d), a soon-to-be-filed motion for a change of venue, Marine's delay in moving for an order to compel such discovery until after their out-of-state move and their financial inability to attend the potentially open-ended oral examinations in this District.

After a hearing on October 4, 1988, the Court granted Marine's motion and directed the depositions to go forward within ten days of its Order dated and entered October 7, 1988. Upon mutual agreement, the depositions were scheduled for October 17, 1988 and, at the appointed hour, the Debt-

ors appeared with counsel at Marine's counsel's office.

At these depositions, the Debtors invoked the Fifth Amendment privilege against self-incrimination to questions posed to each of them by Marine about their business activities in 1984 and the cashing of checks at Marine on an account in Oswego City Savings Bank. Thereupon, counsel for the bank suspended the depositions—within twenty minutes of their commencement—to seek a ruling from the Court, over the objections of the Debtors' lawyer.

The following day, October 18, 1988, Marine filed the instant motion in the previously indicated form of an Order To Show Cause and requested the Court to strike the Debtors' pleadings and grant it a default judgment.

The Debtors' motion for a change of venue to the Southern District of Florida of all further proceedings, including the pending adversary proceeding, was filed on October 31, 1988 and denied by the Court at an adjourned hearing on November 22, 1988.

### ARGUMENTS

Attaching a copy of the deposition transcript to its letter memorandum, Marine states that the Debtors' financial activities in 1984 and in regard to the cashing of the checks are necessary and appropriate discovery inquiries under the Federal Rules and that the Debtors have unreasonably refused to participate in the court ordered discovery. It asserts that the only objection they raised to its motion compelling deposition testimony was the inconvenience of traveling from Florida to Syracuse, New York and that at no time prior to the depositions did their counsel indicate that they would be invoking their Fifth Amendment privilege.

Thus, rather than challenging the Debtors' exercise of their Fifth Amendment privilege, Marine posits that the Debtors breached their good faith obligation to timely object to the depositions by waiting to do so, unexpectedly, until the depositions were under way, thereby precluding any possibility of compromise or resolution with or without Court intervention. It further states that the Debtors' counsel refused to enter into any of the customary stipulations entered into at depositions.

Marine also claims that any criminal proceedings involving the Debtors had been closed since the Oswego County District Attorney had dropped the criminal charges it had initiated against the Debtors.

The Debtors respond that they appeared in New York State pursuant to the Court's Order and made themselves available for testimony. They state that a considerable amount of testimony was taken and it was only when the questioning turned to transactions in 1984 that they properly invoked their privilege against self-incrimination. Since Marine's characterization of these activities as a "check and cash kiting scheme", if proven, would constitute a felony under New York State law and the statute of limitations had not run, the Debtors maintain that they had every right to invoke the Fifth Amendment's protection.

With regard to the refusal to stipulate, the Debtors contend that had they entered into the usual stipulations, they would have lost the protection of the Fifth Amendment privilege which they claim to be their right in the first instance. They maintain that the privilege's availability neither requires explanations at the time of invocation nor answers to the disputed questions subject to subsequent judicial review at trial as to entitlement. The Debtors further declare that they are indigent and reside in Florida and should not be compelled to appear in New York State since they had cooperated at the depositions and urged Marine to continue.

### DISCUSSION

If the Debtors improperly invoked their privilege against self-incrimination, then they failed to obey the Court's Order of October 7, 1988 and are vulnerable to sanctions under Fed.R.Civ.P. 37(b)(2). *See, e.g.,* *Rivoli Grain Co. v. Litton (In re Litton),* 74 B.R. 557 (Bankr.C.D.Ill.1987) (deposi-

tions related to dischargeability complaint under Code § 523(a)(6)); *In re Connelly,* 59 B.R. 421 (Bankr.N.D.Ill.1986) (Chapter 7 bankruptcy statements and schedules and Code § 341 meeting); *John P. Maguire & Co. v. Sapir (In re Candor Diamond Corp.),* 21 B.R. 147, 152–53 (Bankr.E.D.N.Y.1982) (former Bankr.R. 205 examination of corporate debtor's officer).

Thus, the Court must first determine the proper scope of the privilege in oral examinations conducted prior to a dischargeability trial.

█ It is well settled that the Fifth Amendment privilege against self-incrimination can be asserted at any stage in criminal and civil litigation, including bankruptcy proceedings. *See McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924); *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973); *In re Martin–Trigona,* 732 F.2d 170, 175 (2d Cir.), *cert. denied* 469 U.S. 859, 105 S.Ct. 191, 83 L.Ed.2d 124 (1984); *Olson v. Potter (In re Potter),* 88 B.R. 843, 849 (Bankr.N.D.Ill.1988); *In re Connelly,* 59 B.R. 421, 430 (Bankr.N.D.Ill. 1986). *See also* Federal Rule of Evidence ("Fed.R.Evid.") 501; Bankr.R. 9017. Its primary purpose is to "avoid confronting the witness with the 'cruel trilemma' of self-accusation, perjury or contempt." *In re Martin–Trigona, supra,* 732 F.3d at 174 (quoting *Murphy v. Waterfront Commission,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964)). Moreover, the Due Process Clause does not bar the finder of fact in a civil case from drawing adverse inferences from a party's invocation of the Self–Incrimination Clause of the Fifth Amendment when tempered by the balancing test of Fed.R.Evid. 403. *See Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1557–58, 47 L.Ed.2d 810 (1976) (quoting 8 J. Wigmore, Evidence 439 (McNaughton rev. 1961)); *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137, n. 5, 53 L.Ed.2d 1 (1977); *Machado v. Commanding Officer,* 860 F.2d 542, 544–45 (2d Cir.1988); *Brink's Inc. v. City of New York,* 717 F.2d 700, 708–10 (2d Cir.1983); *United States v. Stelweck (In re Stelweck),*

86 B.R. 833, 850 (Bankr.E.D.Pa.1988); *S.E. Nichols, Inc. v. McGohan (In re McGohan),* 75 B.R. 10, 13 (Bankr.N.D.N.Y.1986).

Indeed, a debtor may not convert a refusal to testify based upon the Fifth Amendment into a declaration of innocence and it has been held that where the plaintiff establishes a *prima facie* case of nondischargeability under Code § 523(a)(2)(B), the burden of producing evidence on the intent to deceive element shifts to the debtor. *See In re Salzman,* 61 B.R. 878, 890 (Bankr.S.D.N.Y.1986). *See also* Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases,* 91 YALE L.J. 1062, 1107–32 (1982).

█ Thus, the privilege is designed to protect the testimony of a party or non-party witness which might later tend to subject that person to criminal prosecution. *See Lefkowitz v. Cunningham, supra,* 431 U.S. at 804, 97 S.Ct. at 2135; *McCarthy v. Arndstein, supra,* 266 U.S. at 40, 45 S.Ct. at 17; *Brink's Inc. v. City of New York, supra,* 717 F.2d at 708–10. The criminal prosecution does not have to be probable or imminent and the witness "need only show a reasonable possibility that his answer will be used against him" in any way for a conviction. *Pillsbury v. Conboy,* 459 U.S. 248, 265 n. 1, 103 S.Ct. 608, 618 n. 1, 74 L.Ed.2d 430 (1983) (Marshall, J., concurring). The protection thus extends to testimony or answers that would alone support a conviction or furnish a link in the chain of evidence necessary to prosecute. *See Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). The privilege must be claimed in a timely fashion, generally at the time the disclosures are initially sought. *See In re Connelly, supra,* 59 B.R. at 431 & n. 12 (citing to *Garner v. United States,* 424 U.S. 648, 658 n. 11, 96 S.Ct. 1178, 1184 n. 11, 47 L.Ed.2d 370 (1976)).

█ However, a total or blanket assertion of privilege claimed in advance of the questions can run afoul of the "reasonable cause to apprehend danger from a direct answer" standard mandated by *Hoffman, supra,* since the witness' "say-so does not of itself establish the hazard of incrimina-

tion." *Id.* 341 U.S. at 486, 71 S.Ct. at 818, *quoted in United States v. Edgerton,* 734 F.2d 913, 919 (2d Cir.1983). *See also Donovan v. Fitzsimmons (In re Morganroth),* 718 F.2d 161, 167 (6th Cir.1983); *In re Crabtree,* 90 B.R. 871, 874–75 (Bankr.E.D. Tenn.1988); *In re J.M.V., Inc.,* 90 B.R. 737, 738–40 & n. 6 (Bankr.E.D.Pa.1988) (citing cases); *In re Connelly, supra,* 59 B.R. at 433 & n. 14 (collecting cases); *In re Candor Diamond Corp., supra,* 21 B.R. at 153. "Reasonable cause" is present where a nexus exists between the risk of prosecution and the information requested. *See In re Potter, supra,* 88 B.R. at 850.

■ Therefore, if the incriminatory nature is not obvious from the question or a blanket assertion of the privilege is made, the witness must explain in a limited fashion how his answer will be incriminatory. *See United States v. Edgerton, supra,* 734 F.2d at 919; *In re J.M.V., Inc., supra,* 90 B.R. at 739. It is then incumbent upon the trial court, guided by its own perception of the case's facts, to conduct a particularized inquiry into the scope and legitimacy of the claim with regard to each question asked. *See In re Hulon,* 92 B.R. 670, 675 (Bankr. N.D.Tex.1988); *In re Potter, supra,* 88 B.R. at 849 (citing to *United States v. Godwin,* 625 F.2d 693 (5th Cir.1980)). *See, e.g., United States v. Zappola,* 646 F.2d 48, 53–54 (2d Cir.1981), *cert denied sub nom., Melli v. United States,* 459 U.S. 866, 103 S.Ct. 145, 74 L.Ed.2d 122 (1982); *G.D. Searle & Co. v. Interstate Drug Exchange,* 117 F.R.D. 495, 502–03 (E.D.N.Y.1987).

That this minimal showing might partially compromise the very privilege, and protection, sought to be asserted cannot be avoided in maintaining the delicate balance between a litigant's right to information and a witness' constitutional right to invoke his or her Fifth Amendment privilege. *See In re Morganroth, supra,* 718 F.2d at 170; *United States v. Edgerton, supra,* 734 F.2d at 919 (citing to *United States v. Rylander,* 460 U.S. 752, 759, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983)); *In re*

*J.M.V. Inc., supra,* 90 B.R. at 739, *quoting United States v. Weisman,* 111 F.2d 260, 261–62 (2d Cir.1940). Moreover, a grant of immunity by the federal authorities is binding on state prosecutions and is made expressly available in bankruptcy proceedings under Code § 344. *See United States v. Buckley (In re Grand Jury Proceedings),* 860 F.2d 11 (2d Cir.1988); *In re Martin–Trigona, supra,* 732 F.2d at 172; *In re Litton, supra,* 74 B.R. at 560; *In re Minton Group, Inc.,* 43 B.R. 705, 708 (Bankr.S.D.N.Y.1984) (citations omitted).

■ Turning to the case at bar, the Court notes that Marine's allegations in its complaint as to the Debtors' check cashing activities in December 1984 might later lead to their criminal prosecution under New York State law. *See, e.g.,* PENAL LAW §§ 155.05(2)(c), 155.35, 155.40 (larceny in second or third degree, Class C & D felonies) (McKinney 1988); *id.* at § 190.65 (scheme to defraud in the first degree, Class E felony); CRIM.PROC.LAW § 30.10 (McKinney 1981) (Class B–E felonies bear five year statute of limitations).[1] Thus, the Debtors face a reasonable and genuine possibility of prosecution, notwithstanding Marine's claims about the District Attorney dropping criminal charges at its instigation. Consequently, their Fifth Amendment privilege would attach to deposition testimony concerning their check cashing activities in December 1984 and could be validly asserted as to questions on that subject within that time period.

■ The Debtors have timely claimed the privilege since neither the original notice of the deposition dated April 8, 1988 nor the October 7, 1988 Order, a general discovery order, set forth the subject matter of the examinations or the content of the individual questions to be propounded, which Marine specifically sought at the depositions. Likewise, the refusal of the Debtors to enter into "the usual stipulations" at the commencement of the depositions was their right inasmuch as it poten-

---

1. This leaves aside the possible tolling of the statutes of limitations due to the Debtors' change of residence to Florida sometime in 1988 and the mechanics of extradition. CRIM. PROC.LAW, *supra,* at § 30.10(4).

tially impacted upon their privilege and not upon admissibility.

■ However, the incriminatory nature of answers to Marine's general questions about the Debtors' business in 1984 and the unspecified occasion of check cashing on their account at the Oswego City Savings Bank is not obvious or readily apparent and the Debtors' invocation of the privilege at that juncture amounted to a blanket assertion requiring judicial resolution upon their limited explanation of "reasonable cause." *See Hoffman v. United States, supra,* 341 U.S. at 486, 71 S.Ct. at 818. The Court notes that the more prudent and expeditious course of action on Marine's part would have been to forge ahead and ask each question so that the Court could specifically rule on the applicability of the privilege as to each deponent. The Debtors also could have moved for a protective order under Fed.R.Civ.P. 26(c) and Bankr.R. 7026. *See, e.g., Brunson v. Rice (In re Rice),* 14 B.R. 843 (Bankr. 9th Cir. 1981). Nonetheless, Marine's election to suspend the examination and seek sanctions from the Court for the Debtors' noncompliance with the October 7, 1988 Order, issued pursuant to Fed.R.Civ.P. 37(a), satisfied the procedural prerequisite for relief under Fed.R.Civ.P. 37(b).

■ "[R]ule 37 is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions, but ... the court should not go beyond the necessities of the situation to foreclose the merits of controversies as punishment for general misbehavior." 4A J.W. Moore, J.D. Lucas & D.M. Epstein, MOORE'S FEDERAL PRACTICE ¶ 37.03[2] at 37–67 (1988 ed.) (summarizing holding in *Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)). The Court views the entry of a default judgment as among the harshest of sanctions and, combined with the striking of pleadings, disproportionate to the failure herein at this early stage of the case, given the lack of proof on willfulness, bad faith, history of dilatory conduct or prejudice to the plaintiff, the availability of lesser sanctions and the constitutional stature of the privilege asserted. *See Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, supra,* 357 U.S. at 208, 78 S.Ct. at 1093–94; *Update Art, Inc. v. Modiin Publishing Ltd.,* 843 F.2d 67, 71 (2d Cir.1988); *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066–68 (2d Cir.1979); *Erie Materials, Inc. v. Barnholdt (In re Barnholdt),* 74 B.R. 760, 763–64 (Bankr.N.D.N.Y.1987). *See also Baker v. Limber,* 647 F.2d 912 (9th Cir.1981) (as a matter of due process, sanction of default judgment is not to be imposed unless discovery noncompliance due to willfulness or bad faith). *Accord Burns v. MacMeekin (In re MacMeekin),* 722 F.2d 32 (3d Cir.1983); *SEC v. Research Automation Corp.,* 521 F.2d 585 (2d Cir. 1975). *See, e.g., Tong Seae (U.S.A.), Inc. v. Edmar Corp. (In re Tong Seae (U.S.A.), Inc.),* 81 B.R. 593 (Bankr. 9th Cir 1988) (complaint dismissed as sanction for failure to produce documents or respond to second set of interrogatories after prior discovery order contained warning of dismissal upon noncompliance); *Paolino v. Brener (In re Paolino),* 87 B.R. 366 (Bankr.E.D.Pa.1988) (turnover complaint dismissed where lesser sanctions, noticing possibility of dismissal on failure to comply, proven ineffective); *Chanute Production Credit Ass'n v. Olson (In re Olson),* 61 B.R. 384 (Bankr.D. Kan.1986) (default judgment in dischargeability action granted where debtors, *inter alia,* resisted discovery with dilatory and evasive tactics for three years). Thus, the Court will stay further proceedings of the underlying adversary complaint pursuant to Fed.R.Civ.P. 37(b)(2)(C), until the Debtors comply with the October 7, 1988 Order as illuminated in this Memorandum–Decision.

This result will protect the rights of all the parties and is the kind of just and reasonable sanction that the rule requires in furtherance of its penal and deterrent purposes. *See Update Art Inc. v. Modiin Publishing Ltd., supra,* 843 F.2d at 71 (citing to *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747

(1976) (per curiam) and *Cine Forty–Second Street Theatre Corp. v. Allied Artist Pictures Corp., supra,* 602 F.2d at 1066); *Hawkins v. Fulton County,* 96 F.R.D. 416 (N.D.Ga.1982).

Accordingly, Marine is directed to resume the oral examinations of the Debtors or, if it so chooses, proceed to trial where the Court will make individual rulings on each question when necessary. Debtor Harry Paul Endres, Jr. is specifically directed to answer the following question:

1. "What business or activity were you involved in 1984?"

Debtor Adell Margaret Endres is specifically directed to answer the following questions:

1. "Were you involved in any business in 1984?"

2. "Did there come a time when you cashed checks on an account maintained in Oswego City Savings Bank with Marine Midland Bank?"

By reason of the foregoing, Marine's motion for sanctions is granted in part and denied in part without prejudice to renew and seek the sanction of dismissal, pursuant to Fed.R.Civ.P. 37(b)(2).

IT IS SO ORDERED.